UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY STEVENS, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>JIFFY LUBE INTERNATIONAL, INC.,<br><br>   Defendant. | Case No. 16-cv-07175-EMC<br><br>**ORRDER DENYING PLAINTIFFS' MOTION FOR VACATUR OF ARBITRATION AWARD**<br><br>Docket No. 2 |

Currently pending before the Court is Plaintiffs Randy and Elissa Stevens' motion for vacatur of an arbitration award. Having considered the parties' briefs and accompanying submissions, the Court concludes that the matter may be resolved without oral argument and, accordingly, **VACATES** the hearing on Plaintiffs' motion. Plaintiffs' motion for vacatur is hereby **DENIED**.

## I.   FACTUAL & PROCEDURAL BACKGROUND

The dispute between Plaintiffs and Defendant Jiffy Lube International, Inc. ("JLI") concerns a franchise agreement that was terminated by JLI on June 20, 2013. On February 26, 2015, Plaintiffs filed suit against JLI in state court. *See Stevens v. Jiffy Lube Int'l, Inc.*, No. C-15-1511 HSG (Docket No. 1) (complaint). JLI removed the case to federal court, where it was assigned to Judge Gilliam, and then moved to compel arbitration. The arbitration motion was eventually resolved by a stipulation and order, filed on September 3, 2015. Under the stipulation and order, Judge Gilliam's case was dismissed in its entirety and Plaintiffs were to pursue their claims in arbitration. *See Stevens v. Jiffy Lube Int'l, Inc.*, No. C-15-1511 HSG (Docket No. 30) (stipulation and order). The stipulation and order specified, *inter alia*, that:

> So long as Plaintiffs re-submit their claims to arbitration and do not pursue any of the dismissed claims and/or any equitable relief, within one month of the dismissal of this Action, [JLI] will waive the contractual statute of limitations [two years] with regard to the remaining claims in the **current complaint**. In doing so, [JLI] is allowing the remaining claims in arbitration to relate back to the date of the Complaint, but is not waiving any other rights regarding limitations.

*Stevens v. Jiffy Lube Int'l, Inc.*, No. C-15-1511 HSG (Docket No. 30) (Stip. & Order ¶ 3.a) (emphasis in original).

On or about September 30, 2015, Plaintiffs submitted a demand for arbitration with the American Arbitration Association ("AAA"). *See* Clancey Decl. ¶ 6 & Ex. B (arbitration demand). Subsequently, on or about October 26, 2015, Plaintiffs filed a Statement of Claim (comparable to a complaint) with the AAA. *See* Spohn Decl., Ex. 4 (Statement of Claim). Plaintiffs then filed an Amended Statement of Claim on or about February 3, 2016, *see* Clancey Decl., Ex. C (amended statement of claim), and a Second Amended Statement of Claim on May 16, 2016. *See* Spohn Decl., Ex. 5 (second amended statement of claim).

In late May and mid- to late June 2016, the arbitrator conducted evidentiary hearings on Plaintiffs' claims for relief. The arbitrator's final award issued on September 13, 2016. *See* Spohn Decl., Ex. 6 (final award in arbitration). The arbitrator essentially ruled in favor of JLI. In the pending motion, Plaintiffs challenge only one of the arbitrator's rulings, more specifically, the ruling regarding their claim for "violation of statutes." Below are the relevant findings of fact from the arbitrator's final award.

- "Claimants purchased a business franchise from . . . a predecessor of [JLI] pursuant to a Franchise Agreement executed on January 6, 1997, for a Jiffy Lube franchise located [in] Napa." Spohn Decl., Ex. 6 (FF ¶ 2). The Franchise Agreement basically had a twenty-year term; thus, there was an expiration date for the franchise in January 2017. *See* Spohn Decl., Ex. 6 (FF ¶ 4).
- "The Napa premises for Claimants' franchise were leased by JLI from Tesoro [a third party]." Spohn Decl., Ex. 6 (FF ¶ 8).
- "The Prime Lease between Tesoro and JLI expired by its terms on June 18, 1998" but had renewal terms; "JLI exercised each [of] those renewal options at Claimants' request. The

1  Prime Lease had no further options to renew after June 18, 2013 and therefore expired by
2  its terms on June 18, 2013." Spohn Decl., Ex. 6 (FF ¶ 10). This was several years before
3  the franchise was due to expire in January 2017.

- JLI subleased the Napa premises to Plaintiffs. The Sublease "expired by its terms on June 18, 1998. Claimants were aware at [the] time [of the signing of the Sublease] that the term of the Sublease was not the same as the 20-year term of the franchise under the [Franchise Agreement]." Spohn Decl., Ex. 6 (FF ¶ 11). The term of the Sublease was eventually extended to June 18, 2013, "co-extensive with the date of expiration of the Prime Lease." Spohn Decl., Ex. 6 (FF ¶ 13). Again, however, this was several years before the franchise was due to expire in January 2017.

- "During initial negotiations in 1996, Claimants were advised by JLI that the Sublease would not include any requirement by JLI to renew the lease on the Napa premises and that should they wish to leave the store there, they would have to negotiate the lease with the landlord [Tesoro] directly." Spohn Decl., Ex. 6 (FF ¶ 12).

- "In or about January 2013, JLI determined that upon expiration of the Prime Lease [on June 18, 2013] it would not negotiate or enter into any new lease with Tesoro for the Napa location and that JLI would inform Claimants of the June 18, 2013 expiration of the Prime Lease and Sublease. JLI further determined to inform Claimants that if they wished to continue their franchise at that location after the expiration of the Prime Lease and Sublease, Claimants would need to negotiate a direct lease with Tesoro." Spohn Decl., Ex. 6 (FF ¶ 15). JLI conveyed the above information to Plaintiffs on or about January 7, 2013. *See* Spohn Decl., Ex. 6 (FF ¶ 18).

- Plaintiffs were not successful in negotiating a new lease with Tesoro. *See* Spohn Decl., Ex. 6 (FF ¶ 28).

- JLI learned of Tesoro's decision not to lease directly to Plaintiffs on or about June 14, 2013. *See* Spohn Decl., Ex. 6 (FF ¶ 29).

- "On June 20, 2013, JLI gave notice to Claimants that with the expiration of their Sublease [on June 18, 2013] and the loss of right to possession of the premises, JLI declared a

3

default under the [Franchise Agreement] without an opportunity to cure pursuant to Sections 17.2 and 17.2.3" of the Franchise Agreement.  Spohn Decl., Ex. 6 (FF ¶ 32); *see also* Spohn Decl., Ex. 6 (FF ¶ 54).  Thus, JLI terminated the franchise agreement.

Based on, *inter alia*, the above factual findings, the arbitrator made the following conclusions of law:

- "Section 17.2.3 [of the Franchise Agreement. which provides for default if the franchisee loses the right to possession of the premises where the franchise is located,] is inconsistent with California Business & Professions Code . . . Section 20020 in effect at that time . . . , which provided . . . that no franchise can be terminated without good cause and the franchisee having a 'reasonable opportunity' to cure their failure to comply with a lawful requirement of their franchise agreement. . . . Claimants' statutory rights under B&P Code Section 20020 were violated by JLI's actions in terminating the franchise without giving any pre-termination opportunity to Claimants to cure."  Spohn Decl., Ex. 6 (FF ¶ 55).
- "Although there was a statutory violation of B&P Section 20020, it is barred by the statute of limitation.  The [Franchise Agreement] provides for a two-year limitation period . . . .  The two year period runs 'from the occurrence of the facts giving rise to such claim or action.'"  Spohn Decl., Ex. 6 (FF ¶ 57).
- "Claimants commenced suit against JLI in Napa County Superior Court on February 25, 2015,[1] which JLI removed to the U.S. District Court for the Northern District of California . . . .[O]n September 3, 2015, that Court entered a Stipulation and Order to Dismiss Action and Compel Arbitration on Modified Terms ('Order').  In pertinent part the Order modified the arbitration agreement and provided that JLI would 'waive the contractual statute of limitations with regard to the remaining claims in the **current complaint**' (bold in original) and in doing so as 'allowing the remaining claims in arbitration to relate back to the date of the Complaint, but is not waiving any other rights regarding limitations.'"  Spohn Decl., Ex. 6 (FF ¶ 58).

---

[1] The arbitrator's reference to February 25, 2015, appears to be an error.  The state court action appears to have been filed on February 26, 2015.

4

- "Pursuant to the Order, JLI did not waive the contractual two-year statute of limitation as to new claims in the Second Amended Statement of Claim filed on May 19, 2016, which included for the first time in the arbitration the claim for violation of statute.  The claim is therefore subject to the contractual two-year limitation period . . . Insofar as the violation of B&P Code Section 20020 occurred on June 20,2013 when JLI terminated the [Franchise Agreement] without giving Claimants an opportunity to cure the default, the claim is time-barred as having been filed more than two years after it accrued."  Spohn Decl., Ex. 6 (FF ¶ 59).
- "Claimants have proven a violation of California Business & Professions Code Sections 20020 and 20021 for JLI's failure, prior to termination by JLI of Claimants' franchise, to give Claimants a reasonable opportunity to cure their lack of compliance with the [Franchise Agreement] caused by loss of ability to occupy the Napa location, but the claim is time-barred under the applicable statute of limitation and therefore Claimants have not proven a recoverable claim.  Claimants failed to prove any other claimed violations of statutes."  Spohn Decl., Ex. 6 (CL ¶ 5).

In the pending motion to vacate, Plaintiffs argue that the arbitrator erred in concluding that their claim for violation of § 20020 was barred by the statute of limitations.  Plaintiffs assert that, under the equitable tolling and relation back doctrines, their § 20020 claim was timely.

## II.   DISCUSSION

A.   Standard of Review

The parties agree that the Federal Arbitration Act ("FAA") governs the pending motion. Under the FAA, a court "may make an order vacating the [arbitration] award . . . where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

In addition, "[a]lthough § 10 does not sanction judicial review of the merits of arbitration awards, [the Ninth Circuit has] adopted a narrow 'manifest disregard of the law' exception under which a procedurally property arbitration award may be vacated." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007).  Notably,

5

> [t]he manifest disregard exception requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." Accordingly, [a court] may not reverse an arbitration award even in the face of an erroneous interpretation of the law. Rather, to demonstrate manifest disregard, the moving party must show that the arbitrator "underst[oo]d and correctly state[d] the law, but proceed[ed] to disregard the same."
>
> In short, "federal courts of appeals have repeatedly held, 'manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law. It must be clear from the record that the arbitrators recognized the applicable law and then ignored it. As such, mere allegations of error are insufficient." Moreover, to rise to the level of manifest disregard "[t]he governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." Id.

*Id.* at 779-80 (emphasis omitted); *see also Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (stating that "'[t]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it'"); *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 670 n.7 (9th Cir. 2012) (stating that "even misstatements of the law followed by erroneous application of the law do not provide grounds upon which a reviewing court may vacate an arbitral award under the FAA[;] [o]ur precedent is quite clear that manifest disregard of the law for the purposes of the FAA occurs only where there is evidence that the Arbitrator knew the law but ignored it nonetheless").

Ninth Circuit law also allows for vacatur where an arbitration award is completely irrational. "[T]he 'completely irrational' standard is extremely narrow and is satisfied only 'where the arbitration decision' fails to draw its essence from the agreement." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009). This standard seems to have more application where a contract interpretation is at issue. *See, e.g.*, *Bosack*, 586 F.3d at 1106 (stating that "[a]n award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions"; adding that, under this standard, a court does "not "decide the rightness or wrongness of the arbitrators' contract interpretation, only whether the panel's decision draws its essence from the contract") (internal quotation marks omitted); *Trs. of the U.A. Local 38 Defined Benefit*

*Pension Plan v. Trs. of the Plumbers & Pipe Fitters Nat'l Pension Fund*, No. 15-cv-04703-YGR, 2016 U.S. Dist. LEXIS 7356, at *13 (N.D. Cal. Jan. 21, 2016) (stating that "[t]his standard is satisfied if the arbitrator is arguably interpreting the contract and that interpretation is plausible") (internal quotation marks omitted).

B. <u>Timeliness of Vacatur Motion</u>

As an initial matter, the Court acknowledges JLI's argument that Plaintiffs' motion for vacatur of the arbitration award was not timely filed, and therefore should be denied on that basis.

The FAA provides that "[n]otice of a motion to vacate . . . must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Here, the arbitrator's final decision was e-mailed to the parties on September 14, 2015. Based on this delivery date, JLI takes the position that Plaintiffs should have filed their motion to vacate by December 14, 2015, and, because Plaintiffs did not file their motion until one day later, *i.e.*, December 15, 2015, the motion was not timely filed.

In response, Plaintiffs argue that their motion was timely filed because the FAA "does not specify a method of computing time," Fed. R. Civ. P. 6(a), which makes Federal Rule of Civil Procedure 6 applicable. Under Rule 6, when a period is stated in days or a longer unit of time, the day of the event that triggers the period is excluded. *See* Fed. R. Civ. P. 6(a)(1). Thus, according to Plaintiffs, the three-month period started as of September 15, 2015 (not September 14), which makes their December 15 motion timely.

There does not appear to be binding authority in support of either party's position. While there is case law that supports each side's respective position, the cases largely seem to have little analysis. *See, e.g.*, *Minneapolis-St. Paul Mailers Union, Local # 4 v. Nw. Publs., Inc.*, No. 02-1101 ADM/AJB, 2003 U.S. Dist. LEXIS 12316, at *12 (D. Minn. July 15, 2003) (stating that "application of Rule 6(a) is appropriate in light of the FAA's lack of specificity on method of calculation"); *Triomphe Partners, Inc. v. Realogy Corp.*, 2011 U.S. Dist. LEXIS 90644, at *6-7 (S.D.N.Y. Aug. 15, 2011) (stating that "Rule 6(a)(1)(A) does not apply to the limitation period" because "[t]he FAA provides other procedures for the calculation of time, specifically stating that the notice of a motion to vacate must be served 'within three months after the award is filed or

7

1  delivered'[;] [t]he limitation period for serving the petition is therefore calculated from the date the
2  award is delivered, not the day after").[2]
3       Fortunately, the Court need not decide the issue of timeliness. Even assuming that
4  Plaintiffs' motion was timely filed, their motion lacks substantive merit for the reasons discussed
5  below.
6  C.     <u>Arbitrator's Knowledge or Awareness</u>
7       According to Plaintiffs, the arbitrator manifestly disregarded the law or her decision was
8  completely irrational on the § 20020 claim because the doctrines of equitable tolling and
9  relationship back kept their claim within the statute of limitations.
10      More specifically, Plaintiffs argue that the running of the statute of limitations should have
11 been tolled during the period that they were trying to resolve the dispute between the parties in the
12 Judge Gilliam case (Case No. 15-1511 HSG). According to Plaintiffs, with the injury occurring
13 on June 20, 2013 (when JLI terminated the franchise agreement), that meant that, at the time the
14 Judge Gilliam case was initiated on February 26, 2015, only one years and eight months
15 (approximately) had passed. Judge Gilliam's case was resolved on September 3, 2015, which
16 started the clock running again (four months remaining), but Plaintiffs initiated the arbitration on
17 or about September 30, 2015, which was before the remaining four months expired. Plaintiffs
18 admit that the initial Statement of Claim presented to the arbitrator did not contain a cause of
19 action for "violation of statutes" (the cause of action was not asserted until the Second Amended
20 Statement of Claim[3]); however, Plaintiffs take the position that the relation back doctrine saves the
21 day because the initial Statement of Claim filed with the arbitrator contained factual allegations
22 supporting the legal theory of relief, *i.e.*, a violation of § 20020. *See, e.g.*, Spohn Decl., Ex. 4 (St.

---

[2] *Triomphe*'s analysis, however, is arguably problematic based on *Sheets v. Selden's Lessee*, 69 U.S. 177 (1865), where the Supreme Court noted that, "when an act is to be performed within a specified period from or after a day named," the day designated is excluded and the last day of the specified period is included. *Id.* at 190.

[3] In its papers, JLI protests that, even when the claim for "violation of statutes" was finally brought up in the Second Amended Statement of Claim, Plaintiffs still did not clearly identify § 20020 as a violated statute. *See* Opp'n at 10. Nevertheless, the arbitrator entertained a § 20020-based claim, presumably because Plaintiffs' pre-hearing arbitration brief more clearly alleged a violation of the statute. *See* Clancey Decl., Ex. G (Plaintiffs' pre-hearing arbitration brief).

of Claim at 5) (alleging that "[n]o provision of The California Franchise Relations Act (Bus. and Professions Code Section 20020) relieved Respondent JLI of its obligation to give Claimants 30 days good cause notice of termination").[4]

The problem for Plaintiffs is that, even if their argument in favor of equitable tolling and relation back may have some merit, the FAA – as noted above – requires more than "'a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'" *Collins*, 505 F.3d at 879. "It must be clear from the record that the arbitrators *recognized* the applicable law and then ignored it," *id.* (emphasis added) – *i.e.*, "'that the arbitrators were *aware* of the law and intentionally disregarded it.'" *Bosack*, 586 F.3d at 1104 (emphasis added).

Here, Plaintiffs have failed to point to any evidence showing that the arbitrator knew or was aware of the law on equitable tolling and relation back. Indeed, tellingly, Plaintiffs do not appear to have raised the issues of equitable tolling and relation back for the arbitrator's consideration at all. *See Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002) (stating that "[m]anifest disregard can be established only . . . where the arbitrator ignored [a governing legal principle\ after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature"; adding that "[a]n arbitrator (even an arbitrator who is a lawyer) is often selected for expertise in the commercial aspect of the dispute or for trustworthiness, rather than for knowledge of the applicable law, and under the test of manifest disregard is ordinarily assumed to be a blank slate unless educated in the law by the parties"); *see also Success Sys. v. Maddy Petroleum Equip., Inc.*, 316 F. Supp. 2d 93, 103 (D. Conn. 2004) (stating that "[t]he Court can hardly find that the arbitrator ignored or defied applicable law if that law was never brought to the arbitrator's attention"); *cf. Coffee Beanery, Ltd. v. WW, L.L.C.*, 300

---

[4] In their reply brief, Plaintiffs also argue that the relation back doctrine by itself establishes that their § 20020 claim was timely because the claim can relate back to the complaint filed in Judge Gilliam's case. Judge Gilliam's case began in state court on February 26, 2015, *i.e.*, within two years of the termination of the franchise agreement. Plaintiffs admit that there is no claim for "violation of statutes" in the Judge Gilliam complaint but, similar to above, argue that the complaint contains factual allegations supporting the legal theory for relief. *See Stevens v. Jiffy Lube Int'l, Inc.*, No. C-15-1511 HSG (Docket No. 1) (Compl. ¶ 34(a)) (alleging that "[n]o provision of The California Franchise Relations Act (Bus. and Professions Code Section 20020) relieved JLI of its obligation to give Plaintiffs 30 days good cause notice of termination").

9

Fed. App'x 415, 420-21 (6th Cir. 2008) (stating that "this is not the type of case in which the governing law has not been brought to the attention of the Arbitrator"). *See, e.g.*, *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 822-23 (2d Cir. 1997) (noting that "[t]he arbitrators obviously knew that DiRussa was requesting attorney's fees under the ADEA (and NJLAD) because they stated in their award that DiRussa sought 'attorney's fees and costs of suit pursuant to the ADEA and NJLAD'" but, "at no point did DiRussa communicate – either by written submission or orally – to the arbitrators that the ADEA mandated such an award to a prevailing party").

Plaintiffs suggest that the arbitrator prevented them from raising or did not give them the opportunity of addressing the issues of equitable tolling and relation back, but the record does not bear out this contention. Because of the stipulation and order in Judge Gilliam's case, Plaintiffs knew that the statute of limitations was an issue for any claim in arbitration that was not pled in Judge Gilliam's case. Thus, it was not surprising that Plaintiffs, in their pre-hearing arbitration brief, argued that their claim for "violation of statutes" was not barred by the statute of limitations. *See* Clancey Decl., Ex. G (Br. at 34-35) (arguing why the statute of limitations was not bar, *i.e.*, based on the discovery rule and the content of California Corporations Code § 31303). Subsequently, the arbitrator expressly allowed Plaintiffs to add their claim for "violation of statutes" to the case, but specifically noted that she was "not mak[ing] any ruling . . . as to whether the proposed claim for statutory violations is barred by the statute of limitation." Clancey Decl., Ex. H (arbitrator's order). Given this forewarning, it was not surprising that Plaintiffs again addressed the statute of limitations in their post-hearing arbitration briefs. In one such brief, Plaintiffs even addressed the statute-of-limitations issue for the § 20020 claim specifically. *See* Clancey Decl., Ex. I (Br. at 4) (arguing that the § 20020 claim is subject to a three-year statute of limitations based on California Civil Code § 338(a)). However, neither in this brief or its subsequently filed reply brief, *see* Clancey Decl., Ex. J (Reply Br.), did Plaintiffs raise equitable tolling or relation back.

Accordingly, under these circumstances, the Court cannot say that there was manifest disregard of the law by the arbitrator or that the arbitrator's decision on the statute-of-limitations issue was completely irrational.

### III. CONCLUSION

Plaintiffs' motion for vacatur is denied. The Clerk of the Court is directed to enter judgment and close the file in this case.

This order disposes of Docket No. 2.

**IT IS SO ORDERED**.

Dated: February 8, 2017

_____
EDWARD M. CHEN
United States District Judge