1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 RANDY STEVENS, et al., Case No. 16-cv-07175-EMC

8 Petitioners,

9 v. **ORDER DENYING PETITIONERS'**
**MOTION FOR NEW JUDGMENT OR,**
10 JIFFY LUBE INTERNATIONAL, INC., **IN THE ALTERNATIVE, TO ALTER**
**OR AMEND THE JUDGMENT**
11 Respondent. Docket Nos. 25, 29

12

13 Previously, Petitioners Randy and Elissa Stevens moved for vacatur of an arbitration award

14 in favor of Respondent Jiffy Lube International, Inc. ("JLI"). Petitioners argued that the arbitrator

15 manifestly disregarded the law or her decision was completely irrational for concluding that one of

16 their claims was time barred. On February 8, 2017, the Court denied the motion and entered a

17 final judgment in favor of JLI. On March 8, 2017, Petitioners filed the currently pending motion

18 for a new judgment or, in the alternative, to alter or amend the judgment. Having considered the

19 parties' briefs and accompanying submissions, the Court deems this matter suitable for resolution

20 without oral argument. The Court thus **VACATES** the hearing on Petitioners' motion.

21 Petitioners' motion for relief is hereby **DENIED**.

22 **I. DISCUSSION**

23 A. Legal Standard

24 Petitioners seek relief pursuant to Federal Rules of Civil Procedure 59(e) and 60(b).[1]

25 _____

26 [1] JLI contends that Rules 59(e) and 60(b) have no applicability and that Petitioners' reliance on the
rules is an improper attempt to circumvent the timing requirement contained in the Federal
27 Arbitration Act ("FAA"). *See* Opp'n at 9-11 (arguing that "Petitioners failed to timely file their
motion within the FAA's three month anniversary window for challenging arbitration awards";
28 citing, *inter alia*, *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d
1334, 1338-39 (9th Cir. 1986), in support). For purposes of this opinion, the Court assumes

1    Under Rule 59(e), a party may move to alter or amend a judgment "no later than 28 days

2  after the entry of the judgment." Fed. R. Civ. P. 59(e). A Rule 59(e) motion may be based on a

3  claim of newly discovered evidence.

4         While it is true that newly discovered evidence is one basis for
       granting a Rule 59(e) motion, not just any evidence will do. To
5         prevail on a Rule 59(e) motion because of newly discovered
       evidence, the movant must show the evidence (1) existed at the time
6         of the trial or proceeding at which the ruling now protested was
       entered; (2) could not have been discovered through due diligence;
7         and (3) was of such magnitude that production of it earlier would
       have been likely to change the disposition of the case.

8

9  *Duarte v. Bardales*, 526 F.3d 563, 573 (9th Cir. 2008), *abrogated on other grounds by Lozano v.*

10  *Montoya Alvarez*, 134 S. Ct. 1224 (2014).

11    Rule 60(b) is similar. Under Rule 60(b), a court may relieve a party from a final judgment

12  based on "newly discovered evidence that, with reasonable diligence, could not have been

13  discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).

14  B.    Newly Discovered Evidence

15    Petitioners argue that they have newly discovered evidence that provides an independent

16  basis for vacating the arbitration award in favor of JLI. Under the FAA, a court may vacate an

17  arbitration award "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. §

18  10. According to Petitioners, they have newly discovered evidence showing that there was

19  "evident partiality" in the arbitrator, Gilda R. Turitz. Petitioners note that (1) Ms. Turitz and her

20  employer law firm, Sideman & Bancroft ("S&B") and (2) Shell Oil, which is the parent of JLI, *see*

21  Mot. at 1, both have a relationship with (3) a third-party organization known as the National

22  Association of Minority and Women Owned Law Firms (NAMWOLF).

23    Petitioners have submitted evidence indicating the following[2]:

24    • NAMWOLF "is a nonprofit trade association comprised of a select group of

25  

_____

26  (without deciding) that JLI's position lacks merit. As discussed below, even with this assumption
    in Petitioners' favor, Petitioners' motion should still be denied.

27  [2] JLI has argued that Petitioners' evidence is not admissible. *See* Opp'n at 19 (arguing that "the
    evidence lacks proper authentication and is inadmissible hearsay"). As above, the Court assumes
28  (without deciding) to the contrary, in Petitioners' favor.

preeminent minority and women-owned law firms and other interested parties. NAMWOLF is focused on being the leading organization in the legal profession dedicated to diversity through developing lasting partnerships between minority and women-owned law firms and private/public entities." R. Stevens Decl., Ex. A (NAMWOLF website page).

- S&B "is an active member" of NAMWOLF. R. Stevens Decl., Ex. L (S&B website page). For several years preceding the arbitration, some S&B lawyers participated in some NAMWOLF meetings and authored some articles in NAMWOLF's Newsletter. *See, e.g.*, R. Stevens Decl., Exs. N-S (website pages, some from S&B). Ms. Turitz herself participated in or at least registered for some meetings (*e.g.*, in 2013, 2015, and 2016) and authored some articles. *See, e.g.*, R. Stevens Decl., Exs. D, R-S, Ex. V (website pages, some from NAMWOLF). Ms. Turitz was to attend the annual NAMWOLF meeting in 2016, which was which was held on September 14-16, 2016, *see* R. Stevens Decl., Ex. J (NAMWOLF website) – *i.e.*, the days immediately after the arbitration award issued on September 13, 2016. *See* Docket No. 3 (Spohn Decl., Ex. 6) (arbitration award).

- In or about 2010, Shell Oil – which is the parent company of JLI, *see* Mot. at 1 – "became a member of [NAMWOLF's] Corporate and Public Entities Partner Program, which advances diversity in the legal profession by encouraging corporations to expend a minimum of 5 percent of their outside counsel budget with certified minority- and women-owned law firms." R. Stevens Decl., Ex. B (news website). In 2011, NAMWOLF "announce[d] a new recognition program – Platinum Partners of NAMWOLF – which honored NAMWOLF's Corporate and Public Entity Partners who succeed[ed] at spending a minimum of 5% of their outside counsel legal budget on minority and women-owned . . . law firms." R. Stevens Decl., Ex. C (NAMWOLF website page). Shell Oil was one of several companies to be recognized with this distinction. In 2014, Shell Oil was a "Silver" sponsor of NAMWOLF's annual meeting. *See* R. Stevens Decl., Ex. F

3

1   (NAMWOLF website page). The same was true in 2016. *See* R. Stevens Decl.,

2   Ex. J (NAMWOLF website). Today, a silver sponsorship requires a contribution of

3   $12,500. *See* R. Stevens Decl., Ex. G (website). Two Shell Oil employees co-

4   chaired NAMWOLF's 2016 annual meeting, which was held on September 14-16,

5   2016, *see* R. Stevens Decl., Ex. J (NAMWOLF website) – *i.e.*, the days

6   immediately after the arbitration award issued on September 13, 2016. *See* Docket

7   No. 3 (Spohn Decl., Ex. 6) (arbitration award). In addition, a Shell Oil employee or

8   employees were panelists at the 2015 and 2016 meetings, *see* R. Stevens Decl.,

9   Exs. H, J (websites), and, in 2016, a Shell Oil employee was one of multiple

10   NAMWOLF Advisory Council members. *See* R. Stevens Decl., Ex. K (website)

11   (stating that "[t]he Council serves as a consultative and advisory body to provide

12   input to the Board of Directors and the membership at large on matters related to

13   the mission, objectives, and goals of the association").

14   • In 2011, both Shell Oil and S&B had panelists at the NAMWOLF annual meeting,

15   albeit at different panels. *See* R. Stevens Decl., Ex. W (website). In 2012, Shell

16   Oil had two employees who were panelists at NAMWOLF's annual meeting; Ms.

17   Turitz was also a panelist at that annual meeting, although at a different panel. *See*

18   R. Stevens Decl., Ex. D (website). In 2013, both Shell Oil and S&B had panelists

19   at the NAMWOLF annual meeting, but at different panels. *See* R. Stevens Decl.,

20   Ex. E (website). As indicated above, Ms. Turitz was scheduled to attend the 2016

21   annual meeting, which was co-chaired by Shell Oil employees.

22   All of the above evidence comes from website research that Mr. Stevens conducted,

23   starting on February 24, 2017. *See* R. Stevens Decl. ¶ 2. In his declaration, Mr. Stevens states:

24   "On February 24, 2017 [several weeks after the final judgment was entered], I started searching

25   the internet because I was wondering why the arbitration ended the way it did." R. Stevens Decl.

26   ¶ 3.

27   It appears that, after Petitioners filed their opening brief in support of their motion on

28   March 8, 2017, Petitioners continued to investigate and thus provided additional evidence in

4

1    conjunction with their reply brief filed on April 3, 2017. *See generally* Ryan Reply Decl. For

2    example, Petitioners provided excerpts from NAMWOLF's 2016 Law Firm Member Directory.

3    S&B is listed in the directory, and Ms. Turitz is identified as one of three contact persons within

4    the firm. *See* Ryan Reply Decl., Ex. G (NAMWOLF directory).

5    C.    Reasonable Diligence

6         Whether Petitioners' motion is predicated on Rule 59(e) or Rule 60(b), they must show

7    that they could not have discovered the new evidence without due or reasonable diligence prior to

8    the time that this Court entered a final judgment (on February 8, 2017). Petitioners have failed to

9    make this showing. All of the evidence existed well before the Court entered a final judgment on

10   February 8, 2017. In their motion and supporting papers, Petitioners give no explanation as to

11   why they could not have found the evidence earlier. As noted above, in his declaration, Mr.

12   Stevens simply states: "On February 24, 2017 [several weeks after the final judgment], I started

13   searching the internet because I was wondering why the arbitration ended the way it did." R.

14   Stevens Decl. ¶ 3.

15        In their brief, Petitioners claim that they "had no reason to investigate [the] relationships

16   [among S&B, Shell Oil, and NAMWOLF], and thus it is not unreasonable that [they] did not

17   discover the evidence until after the Court had issued its Order." Mot. at 4-5. But that excuse is

18   unavailing. Tellingly, Petitioners do not explain what prompted them – after the final judgment

19   was entered – to conduct independent research on what relationships Ms. Turitz and/or her law

20   firm may have had with Shell Oil. Moreover, Petitioners knew about Ms. Turitz's identity as

21   arbitrator as of November 2015, when the "AAA sent a letter stating Ms. Turitz had accepted the

22   appointment as arbitrator." Mot. at 2. That being the case, Petitioners were in a position to

23   investigate whether Ms. Turitz had any inappropriate relationships, regardless of what disclosures

24   she made to the arbitrating parties.[3]

25

26

27   _____

28   [3] As JLI points out, Ms. Turitz did disclose an affiliation with NAMWOLF in her arbitration
     resume. *See* Clancy Decl., Ex. D (identifying speaking engagements at two NAMWOLF annual
     meetings).

5

D.    Evident Partiality

Moreover, even if Petitioners had exercised reasonable diligence, they would fare no

better.  As stated above, under the FAA, a court may vacate an arbitration award "where there was

evident partiality or corruption in the arbitrators."  9 U.S.C. § 10.  Here, Petitioners claim evident

partiality.

The Ninth Circuit has noted the following with respect to evident partiality.

> "Evident partiality" is distinct from actual bias.  In *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145 (1968), the Supreme Court held that a party seeking to vacate an arbitration award for evident partiality need not show that the arbitrator "was actually guilty of fraud or bias in deciding th[e] case."  Rather, the arbitrator's failure to "disclose to the parties any dealings that might create an impression of possible bias" is sufficient to support vacatur.

*New Regency Prods., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1105 (9th Cir. 2007).  The

court continued:

> Based on *Commonwealth Coatings*, we concluded [in a prior case] that the legal standard for evident partiality is whether there are "facts showing a 'reasonable impression of partiality.'"  We explained that this legal standard can be satisfied even where an arbitrator is unaware of the facts showing a reasonable impression of partiality because the arbitrator "may have a duty to investigate independent of [his] . . . duty to disclose."

*Id.* at 1106.

Here, there is insufficient evidence showing a reasonable impression of partiality.

NAMWOLF is an organization that facilitates relationships between lawyers and potential clients.

Even if Ms. Turitz and her law firm were actively engaged in NAMWOLF, and similarly so was

Shell Oil, there is no indication that any kind of relationship was fostered between Ms.

Turitz/S&B and Shell Oil.  There is, for example, no evidence that Ms. Turitz/S&B had any

interactions with Shell Oil.  Nor is there any evidence that Ms. Turitz/S&B solicited Shell Oil for

work, that Shell Oil asked Ms. Turitz/S&B to submit a proposal, or that Shell Oil ever

contemplated engaging Ms. Turitz/S&B.  *See In re Sussex*, 781 F.3d 1065, 1074-75 (9th Cir.

2015) (noting that there is evident partiality "in cases that involved direct financial connections

between a party and an arbitrator or its law firm, or a *concrete possibility* of such connections"; in

6

1  contrast, "courts have rejected claims that undisclosed facts relating to 'long past, attenuated, or

2  insubstantial connections between a party and an arbitrator' created a reasonable impression of

3  partiality") (emphasis added).  The mere fact that S&B and Shell Oil (not JLI, but its parent

4  company) have both participated in an organization dedicated to diversity to the legal protection

5  does not establish a relationship between S&B and JLI sufficient to constitute "evident partiality."

6  Ultimately, Petitioners' assertion as to apparent bias is entirely speculative.

7        To the extent Petitioners have asked to take discovery "to obtain evidence of [Ms. Turitz's]

8  and her law firm's relationship with Shell and Shell legal counsel," Reply at 14, the request is

9  denied.  Petitioners admit that, in *Woods v. Saturn Distribution Corp.*, 78 F.3d 424 (9th Cir. 1996),

10  the Ninth Circuit stated that "'any questioning of arbitrators should be handled pursuant to judicial

11  supervision and limited to situations where clear evidence of impropriety has been presented.'"

12  *Id.* at 430.  Here, there is no clear evidence of impropriety.

## II.  CONCLUSION

14  For the foregoing reasons, Petitioners' motion for relief is denied.

15  This order disposes of Docket Nos. 25 and 29.

16

17  **IT IS SO ORDERED**.

18

19  Dated: April 11, 2017

20  _____

       EDWARD M. CHEN
21     United States District Judge

22

23

24

25

26

27

28